UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARGARET McCARTHY,
    Plaintiff,

v.                                No. 3-05-cv-1696 (WWE)

ST. VINCENT'S MEDICAL CENTER,
    Defendant.

## MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Margaret McCarthy alleges that her former employer, St. Vincent's Medical Center, discriminated against her on the basis of her disability. Specifically, plaintiff alleges that defendant violated the Americans with Disabilities Act ("ADA") and the Connecticut Fair Employment Practices Act ("CFEPA").

Defendant moves for summary judgment.

### Background

The parties have submitted briefs, statements of facts, affidavits and exhibits. These submissions reflect that the following facts are not in dispute.

Plaintiff is a quadriplegic who has been confined to a wheelchair since 1976. In 1998, at age 37, plaintiff worked from home conducting telephone surveys for Horizon Research 7 Consulting. Six years later, plaintiff was assisted by the Bureau of Rehabilitation Services ("BRS") to obtain employment outside of the home.

In October 2004, plaintiff asked Elaine Babliardo, a recruiter at Transitional Employment Services, to contact St. Vincent's regarding an available per diem Switchboard Operator position.

Switchboard Operators are responsible for answering both internal and external telephone calls and for assisting callers by providing patient telephone number information, call redirection, long distance assistance, patient toll charges, visitor information, hours of operation and travel directions. Switchboard Operators must be able to respond quickly and appropriately to emergency calls.

On October 5, 2004, plaintiff interviewed with Human Resources Generalist Faith Argraves. Plaintiff was accompanied by Mimi McGill, the owner of Transitional.

Plaintiff, again accompanied by McGill, had a second interview with Communications Specialist Kimberly Cavallo-Daniele and Communications Supervisor Paul Fernandes. As part of the interview, Cavallo-Daniele took plaintiff and McGill on a tour of the Communications Center. At that time, McGill noted the location of the fax machine and bulletin board. Plaintiff disputes defendant's representation that no request for a change to the location of these items was made at that time of the interview. Defendant and plaintiff also differ on the level of importance that changing the location of these items represented as an accommodation for plaintiff.

Fernandes subsequently contacted Argraves to request that she offer plaintiff the position of per diem Switchboard Operator, and plaintiff commenced orientation on November 29, 2004.

From December 1 to December 21, 2004, plaintiff underwent training with Laura Hoefelt, a senior Switchboard Operator. Defendant asserts that Cavallo-Daniele had concerns about plaintiff's performance during training and gave plaintiff additional training. However, plaintiff disputes both Cavallo-Daniele's assessment of her performance and defendant's characterization of the amount of training that plaintiff

received.

On January 14, 2005, Fernandes and Cavallo-Daniele decided to provide plaintiff with additional training and to monitor her progress. Plaintiff contends that she never received this additional training.

On January 21, 2005, Cavallo-Daniele assigned plaintiff to work the night shift alone.

On January 28, 2005, Cavallo-Daniele and McGill observed plaintiff's performance at the Switchboard, particularly her handling of a Code 99, the emergency code for a patient in cardiac arrest. Plaintiff disputes Cavallo-Daniele's characterization of her skills.

On February 1, 2005, Fernandes met with plaintiff and McGill to advise them of defendant's decision to terminate plaintiff's employment for poor job performance. He also advised plaintiff that defendant would be willing to re-hire plaintiff in another position for which she was qualified should one become available.

This litigation ensued thereafter.

## Discussion

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir. 1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664

F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Liberty Lobby, 477 U.S. at 24.

Disability Discrimination

Defendant argues that plaintiff's state and federal claims of disability discrimination should fail because plaintiff cannot make a prima facie case and, alternatively, cannot rebut defendant's legitimate business reason for her termination.

Both the ADA and CFEPA make it unlawful for an employer to discriminate against an employee on the basis of a disability. Plaintiff's CFEPA claim is subject to the same analysis as her ADA claim. Ezikovich v. Comm'n on Human Rights and Opportunity, 57 Conn. App. 767, 774 (2000).

Pursuant to the ADA, a plaintiff must establish that (1) the employer is subject to the ADA; (2) she is an individual who has a disability within the meaning of the statute; (3) she was otherwise qualified to perform the essential function of her job, with or without reasonable accommodation; and (4) that she suffered an adverse employment action because of her disability. Sista v. CDC Ixis North America, Inc., 445 F.3d 161, 169 (2d Cir. 2006). ADA claims are subject to the familiar burden-shifting analysis of McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973). If plaintiff establishes a

4

prima facie case, defendant must articulate a legitimate, non-discriminatory business reason for the alleged discriminatory action. Plaintiff must then prove by a preponderance of the evidence that the supposed legitimate reason is actually a pretext for discrimination. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515 (1993). A plaintiff bears a minimal burden on the prima facie case and need only demonstrate that she posses the basic skill necessary for the performance of the job. Sista, 445 F.3d at 171.

Defendant first argues that plaintiff cannot establish that she was "otherwise qualified." In this instance, plaintiff completed her training and was assigned to work at least one shift on her own. Thus, the Court finds that plaintiff possessed the ability to work the job to satisfy the third prong of the prima facie case. In light of plaintiff's requests for accommodation and her subsequent termination, plaintiff has also met the fourth prong of her minimal prima facie burden.

Defendant next argues that plaintiff cannot prove that she was terminated because of her disability. It asserts as its legitimate business reason that she was terminated due to her poor performance that jeopardized the health and safety of individuals requiring medical assistance.

Defendant maintains it is entitled to a strong presumption of no discrimination because Fernandes hired her with full knowledge of her disability, and then fired her at the end of her 90-day probationary period. When the same actor hires and fires a person who is within the protected class, it is difficult to impute an invidious motivation that would be inconsistent with the decision to hire. Carlton v. Mystic Transp. Inc., 202 F.3d 129, 137 (2d Cir. 2000). However, in this instance, the decisional basis, that

plaintiff's performance was deficient and that additional training could not assist her improvement, appears to be animated by Cavallo-Daniele's assessment of plaintiff. Plaintiff maintains that Cavallo-Daniele's criticisms were motivated by her negative reaction to requests for accommodation to facilitate her use of the bathroom on the first floor and to have the fax machine and bulletin board moved.[1]

The Court should not substitute its own assessment of the evidence for that of a reasonable jury. See D'Cunha v. Genovese/Eckerd Corp., 479 F.3d 193, 196 (2d Cir. 2007). In this instance, the disputed issues as to the apparent inconsistent treatment, the accommodations, and training and counseling that plaintiff received raise genuine issues of fact that should be resolved by a jury.

Retaliation

In her opposition papers, plaintiff raises a claim for retaliation in violation of the ADA. Defendant asserts that plaintiff did not plead such a claim and that it is inappropriate to raise new claims in a response to a motion for summary judgment. This Court declines to consider this claim on the motion for summary judgment because plaintiff has not pleaded a retaliation claim in the complaint and has not filed a motion to amend the complaint. See Mauro v. Southern New England Telecommunications, Inc., 208 F.3d 384, 386 n.1 (2d Cir. 2000) (affirming court's refusal to consider claim not pled in complaint).

## Conclusion

For the foregoing reasons, defendant's Motion for Summary Judgment [doc. #42]

---

[1] The parties dispute whether plaintiff received a reasonable accommodation.

is DENIED as to plaintiff's claims of disability discrimination (counts one and two).  The Court declines to consider the claim of retaliation that is not pled in the operative complaint.

_____/s/_____
Warren W. Eginton
Senior U.S. District Judge

Dated at Bridgeport, Connecticut this __26th_ day of June, 2008.